UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC., | |
| Plaintiff, | 2:09-CV-00348-PMP-LAR |
| v. | ORDER |
| LEANDRUS YOUNG and ARTURO ROJAS CARDONA, | |
| Defendants. | |

Presently before the Court is Defendant Leandrus Young's Motion for Summary Judgment (Doc. #47), filed on January 6, 2010. Plaintiff Aristocrat Technologies, Inc. filed a Response (Doc. #53) on February 8, 2010. Defendant filed a Reply (Doc. #55) on February 22, 2010.

**I. BACKGROUND**

Emex, S.A., Entretenimiento de Mexico, S.A. de C.V., and Integradora de Mexico, S.A.P.I de C.V. are current or were prospective Mexican gaming entities owned and/or operated by Defendant Arturo Rojas Cardona ("Cardona"). (Def.'s Mot. Summ. J. ["Def.'s Mot."] (Doc. #47), Ex. C at ¶ 4; Ex. N at ¶ 3.) On November 14, 2006, Defendant Leandrus Young ("Young") and Cardona executed a Cashless Redemption Sales Agreement ("11/14/06 CRDSA") with Plaintiff Aristocrat Technologies, Inc. ("Aristocrat") for the purchase of 800 gaming devices. (Id., Ex. B.) In addition, Young executed both a personal and corporate guarantee agreeing to pay any obligations of the borrower. (Id., Ex. E.) Emex, S.A. is listed as the customer or borrower under the 11/14/06 CRDSA. (Id., Ex.

1

B; see also Ex. D.) According to Young, Emex, S.A. was to be a wholly different legal entity from Entretenimiento de Mexico, S.A. de C.V. for which Young would be the controlling shareholder and Cardona would be president and manage operations. (Def.'s Mot., Ex. C at ¶ 4; Ex. G at ¶ 5.) Emex, S.A. would, however, operate under the permit issued to Entretenimiento de Mexico, S.A. de C.V. (Id.) According to Frederick Bowyer ("Bowyer"), Aristocrat's director of credit, pursuant to the 11/14/06 CRDSA, he ran a credit check on the entity Entretenimiento de Mexico, S.A. de C.V. (Pl.'s Opp'n to Def.'s Mot. Summ. J. ["Pl.'s Opp'n"] (Doc. #53), Ex. I at ¶ 3.) According to Edwin Hunter ("Hunter"), Cardona and Young's attorney, although Emex, S.A. was sometimes referred to as Integradora Entretenimiento de Mexico, S.A.P.I. de C.V., and it utilized Entretenimiento de Mexico, S.A. de C.V.'s permit, Emex, S.A. was not a d/b/a for any other entity. (Def.'s Mot., Ex. G at ¶ 6.)

Around the time the parties executed the 11/14/06 CRDSA, Aristocrat received a letter from the Nevada Gaming Control Board ("NGCB") requesting due diligence materials regarding the legality of Aristocrat's business deals in Mexico. (Id., Ex. I.) As a result, according to David Jimenez ("Jimenez"), Plaintiffs' attorney in the business dealings with Aristocrat, Aristocrat delayed delivery of the gaming devices. (Id., Ex. H at ¶ 8.) Sometime in 2007, a dispute arose between Young and Cardona (Id., Ex. C at ¶ 11-12.) Consequently, Emex, S.A. was never created. (Id., Ex. H at ¶ 7.)

In June 2007, Aristocrat and Cardona negotiated a Hold Harmless agreement holding Aristocrat harmless from the cancellation or modification of the 11/14/06 CRDSA due to the NGCB investigation. (Id., Ex. H at ¶ 9; Ex. H-2.) Additionally, Aristocrat drafted a letter to the NGCB informing them that Aristocrat could not validate Aristocrat's Mexican permit and therefore was cancelling an order of 500 gaming devices. (Pl.'s Opp'n, Ex. C.) However, according to Aristocrat, it never executed the Hold Harmless Agreement or sent the letter to the NGCB. (Id., Ex. G at ¶¶ 4-6; Ex. H at ¶ 6.) Instead, after Tom

Smock ("Smock"), Aristocrat's general counsel, took a trip to Mexico, Smock sent an email to Jimenez informing him that Aristocrat was willing to proceed with the sale of the gaming devices. (Def.'s Mot., Ex. H at ¶ 12; Ex. H-3.)

On March 28, 2007, Cardona formed Integradora Entretenimiento de Mexico, S.A.P.I. de C.V. (Id., E. H at ¶ 6; Ex. H-1.) On October 19, 2007, Cardona executed a personal guarantee for a new agreement to purchase 400 gaming devices from Aristocrat listing Integradora Entretenimiento de Mexico, S.A.P.I de C.V. as the purchaser. (Id., Ex. H-4 at 30.) On November 12, 2007, Cardona and Aristocrat executed a new Cashless Redemption Device Sale Terms and Conditions ("11/12/07 CRDSTA") for the 400 gaming devices. (Id., Ex. H-4.) Cardona and Aristocrat "agreed that the sale of the gaming devices would be made to Integradora Entretenimiento de Mexico, S.A.P.I de C.V. organized as an operator of certain locations using the permit of Entretenimiento de Mexico, S.A. de C.V." (Id., Ex. H at ¶ 13.) Additionally, although there is no written agreement to do so, according to Jimenez, "it was further agreed that Integradora Entretenimiento de Mexico, S.A.P.I de C.V. would be treated as the customer under the 11/14/06 CRDSA." (Id. at ¶ 14.)

Prior to executing the 11/12/07 CRDSTA, Hunter engaged in a telephone conference with Edward Lee, an Aristocrat representative, and Jimenez in which they discussed the permit issued to Entretenimiento de Mexico, S.A. de C.V. (Id., Ex. N at ¶ 3.) In the telephone conference, Jimenez and Hunter explained to Lee that Entretenimiento de Mexico, S.A. de C.V. did not directly operate any gaming establishments, rather it assigned its rights to operating entities who would then run the gaming establishment. (Id.) Hunter subsequently sent a follow-up letter to Lee informing Lee that Integradora Entretenimiento de Mexico, S.A.P.I. de C.V. and Entretenimiento de Mexico, S.A. de C.V. had a commonality of equity ownership. (Id., Ex. N-1.) According to Bowyer, Cardona represented that Entretenimiento de Mexico, S.A. de C.V. was changing its name to

Integradora Entretenimiento de Mexico, S.A.P.I. de C.V., and as such, Aristocrat understood the two names to represent the same legal entity. (Pl.'s Opp'n, Ex. I at ¶ 8.)

In September of 2007, around the time Cardona and Aristocrat were negotiating the new agreement, Aristocrat attempted to run a credit report on Young, which Young rejected. (Def.'s Mot., Ex. C at ¶ 13.) Thereafter, Young sent a letter to Aristocrat stating that Young believed the prior personal guarantee was null because the terms of the original 11/14/06 CRDSA had been changed. (Id., Ex. C at ¶ 15; Ex. M.) Aristocrat responded that Young's personal guarantee was still fully enforceable and effective. (Id., Ex. C at ¶ 14.)

After April 10, 2008, Cardona stopped making payments to Aristocrat pursuant to the 11/14/06 CRDSA and the 11/12/07 CRDSTA. (Pl.'s Opp'n, Ex D; Ex. F at 69.) Under both contracts, $2,803,616.65 of the over six million dollar total is still due. (Id., Ex. F at 71.) Although it is unclear whether Aristocrat fully performed under the agreements, it provided bill of lading invoices establishing that at least 267 gaming devices were delivered to Entretenimiento de Mexico, S.A. de C.V. (See id., Ex. B.) On February 23, 2009, Aristocrat filed a Complaint against Cardona and Young alleging various breach of contract claims. (Compl. (Doc. #1).) Subsequently, the Court entered a default judgment against Cardona.[1] (Default Judgment (Doc. #41).)

Young now moves for summary judgment arguing that no question of material fact remains that the 11/14/06 CRDSA and corresponding personal and corporate guarantees are no longer enforceable. Alternatively, Young argues that even if he is personally liable under the 11/14/06 CRDSA, only 267 gaming devices were shipped and Aristocrat has already been paid for those devices. In response, Aristocrat contends that Young's personal guarantee is still valid and enforceable as to the 11/14/06 CRDSA and that Aristocrat fully

---

[1] The Court also entered a default judgment against Young, but subsequently set it aside (See Default Judgment (Doc. #26); Mins. of Proceedings (Doc. #34).)

4

performed. Additionally, Aristocrat argues Young's summary judgment motion is premature and requests additional discovery pursuant to Federal Rule of Civil Procedure 56(f).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts that show a genuine issue for trial." Id. (internal quotation omitted). A moving party without the ultimate burden of persuasion at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party. Leisek, 278 F.3d at 898.

In the interest of justice, the Court may grant additional time for discovery where the opposing party to a motion for summary judgment has presented by affidavit, compliant with Rule 56(f), that they cannot obtain facts essential to the opposition of the motion. Fed. R. Civ. P. 56(f). However, a party seeking further discovery under Rule 56(f) bears the burden to make clear "what information is sought and how it would preclude summary judgment." Nicholas v. Wallenstein, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (citing Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998)). As the United States Court of Appeals for the Second Circuit has noted, "it is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his

5

complaint, and amplifying them only with speculation about what discovery might uncover." Contemporary Mission v. U.S. Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981).

**III. DISCUSSION**

Young contends his personal and corporate guarantees under the 11/14/06 CRDSA are no longer legally enforceable because the parties never formed Emex, S.A., the corporation listed as the customer and intended beneficiary of the agreement. Additionally, Young contends Cardona materially changed the 11/14/06 CRDSA when he changed the borrower to Integradora Entretenimiento de Mexico, S.A.P.I. de C.V. The material change, Young argues, exonerates Young's liability as a guarantor. Alternatively, Young contends that even if his personal guarantee is still enforceable, Aristocrat only sent 267 gaming devices under the 11/14/06 CRDSA, and those devices have been paid for.

In response, Aristocrat contends that it understood Emex, S.A., Entretenimiento de Mexico, S.A. de C.V., and Integradora Entretenimiento de Mexicao, S.A.P.I. de C.V. to be the same entity, and as such, the alleged change in borrower and Young's contention that Emex, S.A. was never formed do not affect the enforceability of Young's personal guarantee. Additionally, Aristocrat argues that all 800 gaming devices were delivered under the 11/14/06 CRDSA, and Young is therefore liable for the full amount pursuant to the 11/14/06 CRDSA. Finally, Aristocrat contends Young's motion for summary judgment is premature and Aristocrat requests additional discovery pursuant to Federal Rule of Civil Procedure 56(f) to establish that all three names represent the same legal entity and that Aristocrat fully performed.

Under Nevada law, contracts of guarantee are subject to the statute of frauds. See Nev. Rev. Stat. § 111.220(2). To satisfy the statute of frauds, a contract must contain certain essential terms including the names of the parties, the interest or property affected, and the consideration paid therefor. Pentax Corp. v. Boyd, 904 P.2d 1024, 1026 (Nev. 1995). Where a contract is unambiguous on its face, parole evidence may not be introduced

to explain its meaning.  Kaldi v. Farmers Ins. Exchange, 21 P.3d 16, 21 (Nev. 2001).  Where a contract is ambiguous, parole evidence is admissible to explain or supplement terms and to ascertain the true intentions of the parties, but it may not be used to vary or contradict the contract terms.  M.C. Multi-Family Development, LLC v. Crestdale Assocs., Ltd., 193 P.3d 536, 544-45 (Nev. 2008).  "A contract is ambiguous if it is reasonably susceptible to more than one interpretation."  Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003) (quotation omitted).

"It is well-settled that guarantors and sureties are exonerated if the creditor alters the obligation of the principal without the consent of the guarantor or surety."  Southwest Securities v. AMFAC, Inc., 879 P.2d 755, 757 (Nev. 1994) (quotation omitted).  In Teledyne Mid-America Corporation v. HOH Corporation, a husband and wife personally guaranteed trade payables owed to the manufacturer while the husband was operating one of the manufacturer's distributorship franchises as a sole proprietor.  486 F.2d 987, 989 (9th Cir. 1973).  The husband subsequently incorporated the sole proprietorship and eventually merged it with another corporation making it a wholly owned subsidiary of the new corporation.  Id.  The Ninth Circuit Court of Appeals held the husband and wife could not be liable as guarantors for the obligations created by the new corporation.  Id. at 991.  In so holding, the Court reasoned that "[h]ere there is not just a change in the character of the obligation, nor is its time or manner of payment that which is altered.  The creditor here seeks to reach a different debtor, an entirely different legal entity than the original obligor."  Id.

Although Emex, S.A. is listed as the customer on the 11/14/06 CRDSA, there is ambiguity as to whether the parties understood Emex, S.A. to be the same legal entity as Entretenimiento de Mexico, S.A. de C.V. and Integrado Entretenimiento de Mexico, S.A. de C.V.  The Court, therefore, will consider parole evidence to explain the true intentions of the parties when they executed the 11/14/06 CRDSA and 11/12/07 CRDSTA.

Viewing the facts in the light most favorable to Aristocrat, genuine questions of material fact remain as to whether Cardona and Aristocrat materially changed the 11/14/06 CRDSA by changing the contracting borrower, thus exonerating Young's personal guarantee. Genuine questions of material fact also remain as to whether Young's personal guarantee is null and void because Cardona and Young never formed Emex, S.A. Aristocrat has presented evidence that it believed Emex, S.A. was the same entity as Entretenimiento de Mexico, S.A. de C.V. and Integradora Entretenimiento de Mexico, S.A.P.I. de C.V. Aristocrat's credit director ran the credit check for the 11/14/06 CRDSA on the name Entretenimiento de Mexico, S.A. de C.V. Additionally, Aristocrat has presented evidence that Cardona represented to Aristocrat that Integradora Entretenimiento de Mexico, S.A.P.I de C.V. was merely a new name for Entretenimiento de Mexico, S.A. de C.V., not a new legal entity. Accordingly, Defendant Young's Motion for Summary Judgment is denied.

In addition to finding there are remaining questions of material fact, summary judgment should also properly be denied in light of Aristocrat's 56(f) request for further discovery. Albeit a rather minimal showing, Aristocrat has nonetheless met its 56(f) burden. Aristocrat requests discovery to establish that Entretenimiento de Mexico, S.A. de C.V., Integradora Entretenimiento de Mexico, S.A.P.I. de C.V. and Emex, S.A. are all the same entity and that Aristocrat fully performed under the 11/14/06 CRDSA. Specifically, Aristocrat intends to depose the declarants Young relies on in his Motion. Aristocrat has already presented some evidence establishing that all three entities are the same and that Aristocrat fully performed. Thus, further discovery is warranted to determine the truth of the parties' contentions.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Young's Motion for Summary Judgment (Doc. #47) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff Aristocrat's request for further discovery is hereby GRANTED.

IT IS FURTHER ORDERED the parties shall show cause why the Court should not unseal the parties' motions.

DATED: July 1, 2010.

_____
PHILIP M. PRO
United States District Judge