UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC., | 2:09-CV-00348-PMP-VCF |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| LEANDRUS YOUNG, | |
| Defendant. | |

This case calls upon the Court to determine whether Defendant Leandrus Young is liable to pay Plaintiff Aristocrat Technologies, Inc. for the purchase of 800 cashless gaming devices in accord with a sales agreement executed November 14, 2006, and also pursuant to personal and corporate guarantees executed by Young. For the reasons set forth below, the Court finds Plaintiff Aristocrat is entitled to judgment against Defendant Young for the unpaid balance due for the purchase of the 800 gaming devices in question.

This action was commenced February 23, 2009, by the filing of Plaintiff Aristocrat's Complaint against Defendants Young and Arturo Rojas Cardona alleging sixteen causes of action deriving from a "Cashless Redemption Device Sales Agreement" ("CRDSA") and a "Cashless Redemption Device Sale Terms and Conditions" ("CRDST&C"), referred to herein as the "First Agreement", executed

by Aristocrat, Cardona, and Young in October and November 2006, and personal and corporate guarantees executed by Defendant Young to secure the First Agreement, for the purchase of 800 cashless gaming devices to be provided by Aristocrat to EMEX, S.A., a Mexican corporation for the sum of $4,120,000. Defendant Cardona was the President and Chief Executive Officer of Integradora Entretenimiento de Mexico, S.A. de C.V., d/b/a EMEX, S.A.[1] This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332, and venue is proper in this Court in accord with the First Agreement.

This case proceeded to trial before the Court, sitting without a jury, following which post-trial briefs were filed by the Parties. Plaintiff also filed a Motion to Amend Complaint (Docs. #116 & #116-1) adding three additional causes of action for fraudulent inducement, negligent misrepresentation, and negligent misrepresentation by non-disclosure. Defendant Young also filed a Motion to Strike Parol Evidence (Doc. #118).

In a prior Order denying Defendant's Motion for Summary Judgment (Doc. #58), this Court ruled it would consider parol evidence to resolve ambiguity as to whether the Parties understood EMEX, S.A. to be the same legal entity as Entretenimiento de Mexico, C.V. and Integrado Entretenimiento de Mexico, S.A. de C.V. Consistent with that ruling, the Court at trial permitted parol testimony on this issue to explain the intentions of the Parties when they executed the First Agreement. Defendant Young's Motion to Strike Parol Evidence does not persuade the Court to alter it's prior ruling. The Court will, therefore, deny Defendant Young's Motion to Strike Parol Evidence (Doc. #118).

A preponderance of the evidence adduced at trial establishes that Plaintiff

---

[1] On August 20, 2009, the Court entered a Default Judgment against Defendant Arturo Rojas Cardona (Doc. #41).

Aristocrat satisfied its contractual obligation to EMEX, S.A., a Mexico corporation. The testimony of virtually every witness called at trial, as well as the interchangeable references to EMEX and Entretenimiento de Mexico, S.A. de C.V. in several relevant exhibits supports the finding that at the time the First Agreement and Guarantees were executed, the Parties understood EMEX to be Entretenimiento de Mexico, S.A. de C.V. Notwithstanding Young's current claim to the contrary, the Court finds that the obligation he guaranteed was based upon the common understanding of the Parties that EMEX, S.A. and Entretenimiento de Mexico, S.A. de C.V. were one and the same. Young never advised Aristocrat of EMEX's alleged non-existence and is now estopped from asserting a defense to his obligations under the loan guarantees based upon the purported non-existence of EMEX. Pelligrini v. State, 34 P.3d 519 (Nev 2001).

Additionally, to the extent the record would support a finding that EMEX, S.A. was not formed at the time of the execution of the First Agreement, Young as the alleged "controlling shareholder" of EMEX, S.A. would have known of the status of EMEX, but failed to apprise Aristocrat of its status. Clearly, Aristocrat detrimentally relied upon Young's assertions within the First Agreement and Young is properly estopped equitably from now arguing the non-existence of EMEX, S.A. to void his obligations under the First Agreement and related guarantees. Topaz mutual Co., Inc. v. Marsh, 108 Nev. 845, 839 P.2d 606 (1992), and Tarrant v. Monson, 96 Nev. 844, 619 P.2d 1210 (1980).

     The evidence adduced at trial further supports the finding that Aristocrat shipped the 800 gaming devices in question in accord with the First Agreement and the subsequent instructions of Entretenimiento. The first shipment of 267 Gaming Devices occurred within 90 days. The remaining 533 Gaming Devices were shipped after Aristocrat complied with requests for information required by the Nevada State Gaming Control Board. There is no doubt that Plaintiff and Defendants understood that

Aristocrat was subject to regulation by the Nevada State Gaming Control Board and the Court finds it reasonable to conclude that all Parties understood that inquiries by the Nevada State Gaming Control Board could result in delay of the shipment of Gaming Devices to Entretenimiento.  Additionally, the Court finds persuasive Plaintiff's argument that delay in the second shipment of 533 Gaming Devices was excused by the First Agreements Force Majeure Clause which provides:

> "Vendor shall not be deemed in breach hereof . . . by reason of . . . any delay in performance resulting from any cause beyond the reasonable control of Vendor, including acts or omissions of Customer, fires, labor disputes . . . or the inability to obtain labor, manufacturing facilities or material from the usual source of Vendor or by reason of compliance with any applicable laws, regulations or orders of any governmental department or agency."

Here, inquiries by the Nevada State Gaming Control Board, and circumstances beyond the control of Aristocrat occurring in the country of Serbia where Aristocrat's supplier, Euro Slot, was located, caused the delay in Aristocrat's second shipment of 533 Gaming Devices and are excused the First Agreement's Force Majeure Clause.  Similarly, delays occurring after the 533 Gaming Devices arrived in Laredo, Texas were caused by Defendants and hence are also excused under the First Agreement's Force Majeure Clause.

The Court further rejects Young's argument that he should be relieved of his obligations under the guarantees on the basis that Aristocrat and Cardona materially modified the First Agreement without providing Young with notice of the modifications.  The evidence adduced at trial establishes by a preponderance of the evidence that Young waived his right to receive notice of modifications to the First Agreement. Brunzell v. Golden Gate National Bank, 85 Nev. 345, 455 P.2d 31 (Nev. 1969).  Further, as is argued by Aristocrat, the Court finds that the alleged modifications to the First Agreement were not sufficiently "material" so as to cancel the guarantees made by Young. Lee Tire & Rubber Co. Of New York v. McCarran,

56 Nev. 458, 55 P.2d 633 (Nev. 1960).  Regardless, any revocation of the guarantees by Young could only be effective to the extent his obligations had not already been established under the First Agreement.  Here, it is undisputed that Young guaranteed payment for all 800 Gaming Devices and Young's revocation of his guarantees does not extinguish his obligations which were fixed prior to the termination.  Finally, Young's argument that a novation of the Final Agreement occurred by substituting Intergradon as the "Customer" for the 533 Gaming Device Shipment fails under Nevada's Statute of Frauds. Nev. R. Stat. § 104.2201.

        Based upon the foregoing Findings of Fact and Conclusions of Law, the Court finds that Plaintiff Aristocrat is entitled to judgment on its claims of breach of contract and breach of the covenant of good faith and fair dealing.  The Court further finds that based upon the guarantees, Young is obligated to pay Aristocrat's reasonable attorneys' fees in bringing this action.  The Court rejects Aristocrat's post-trial request that it be permitted to amend its complaint to find Young liable under a fraudulent or negligent misrepresentation or individual liability theory.

**IT IS SO ORDERED**.

DATED this 17th day of October, 2012.

_____
PHILIP M. PRO
United States District Judge